Filed 11/13/23  In re Evan N. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re EVAN N., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. E.N. et al., Defendants and Appellants. | F086492 (Super. Ct. No. JVDP-21-000204) **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant E.N.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant A.R.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P. J., Peña, J. and DeSantos, J.

## INTRODUCTION

A.R. (mother) and E.N. (father) are the parents of son Evan N. (born May 2020). On May 30, 2023, this court accepted a stipulated remand between the parents and the Stanislaus County Community Services Agency (agency) to conditionally reverse the juvenile court's finding that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) did not apply. (*In re Evan N.* (May 30, 2023, F085511 [nonpub. opn.] (*Evan N.*).) After remand, the juvenile court again found ICWA did not apply and reinstated its ICWA findings. Mother and father now appeal from the order reinstating the ICWA findings.

On appeal, they contend the juvenile court again failed to comply with the inquiry requirements of ICWA and related California law because the agency failed to conduct a further inquiry with the Apache tribes after an extended family member revealed possible Indian ancestry with an Apache tribe from Mexico.[1] The agency disagrees error occurred. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

**Facts Related to the First Appeal**

"**Petition and Detention**

"On October 8, 2021, the agency filed a petition on behalf of Evan pursuant to [Welfare and Institutions Code] section 300, subdivisions (b)(1), (g), and (j).[3]

---

**1** "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

**2** Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

**3** All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

"Prior to the detention hearing, mother and father each filled out Parental Notification of Indian Status (ICWA-020) forms. Mother denied having Indian ancestry. Father reported he was or could be a member of, or eligible for membership in, the Choctaw and Cherokee tribes.

"On October 12, 2021, the juvenile court held a detention hearing where it inquired about the family's Indian ancestry. Mother again denied having Indian ancestry. Father confirmed he was or could be a member of the Choctaw and Cherokee tribes. The court found ICWA could apply and ordered the agency to investigate further. The court ordered Evan detained and set a combined jurisdiction and disposition hearing.

"**Jurisdiction and Disposition**

"On November 17, 2021, the agency sent Notice of Child Custody Proceedings for Indian Child (ICWA-030) forms to the Bureau of Indian Affairs (BIA), the Cherokee Nation of Oklahoma, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, the Choctaw Nation of Oklahoma, the Mississippi Band of Choctaw Indians, and the Jena Band of Choctaw.

"On December 9, 2021, the juvenile court held a combined jurisdiction and disposition hearing where it stated that it was unknown whether ICWA applied. The hearing was set for a contested hearing.

"On February 15, 2022, the juvenile court held the contested hearing. Again, the court stated it was unknown whether ICWA applied. The court noted ICWA notices had been sent and the 10-day waiting period had perfected. The court found the allegations in the amended petition true, bypassed the parents for reunification services, and set a section 366.26 hearing.

"**Section 366.26**

"On February 28, 2022, the agency filed a 'MOTION FOR DETERMINATION OF ICWA APPLICABILITY' and attached letters from all six tribes it noticed. All of the tribes reported Evan did not qualify as an Indian child within the meaning of ICWA. The BIA sent a response acknowledging the agency noticed the tribes and stating that tribal eligibility was up to the individual tribes.

"On June 9, 2022, the juvenile court held a section 366.26 hearing and found ICWA did not apply. The hearing was continued.

"On December 22, 2022, the juvenile court terminated parental rights and ordered a permanent plan of adoption. The court again found ICWA did not apply.

"Mother and father timely filed notices of appeal." (*Evan N.*, *supra*, F085511, fn. omitted.)

In the first appeal, the parents argued that extended maternal and paternal family members were not asked about Evan's possible Indian ancestry. The parties filed a motion for a stipulated remand to the juvenile court with this court so that the agency could comply with ICWA. On May 30, 2023, this court accepted the parties' stipulation. (*Evan N.*, *supra*, F085511.)

**Facts Related to the Current Appeal**

On May 22, 2023, the agency filed an ICWA compliance report with the juvenile court where it recommended that the prior ICWA finding be reaffirmed, stating ICWA did not apply. The report stated father had reported he was "pretty sure that there is no Indian [a]ncestry on his side of the family." Father stated paternal grandmother would have known the answer, but she had just passed away. Father provided the agency with phone numbers for paternal great aunt Teresa O., paternal cousin "Teddy," and paternal uncle "Kenny." The agency spoke with Teresa who did not know whether the paternal family had Indian ancestry and provided paternal great-grandmother Cecilia F.'s contact information. Teresa stated she did not want anything to do with the case anymore. The social worker also spoke to Kenny who stated he did not answer personal questions from people he did not know and refused to speak any further.

As for the maternal family, the social worker spoke with mother who also denied having Indian ancestry. Additionally, the agency conducted an inquiry with maternal grandmother B.H. who reported the maternal side of the family possibly had Apache ancestry with a tribe from Mexico, but she did not believe it was a federally recognized tribe or that anyone was an enrolled member. She was asked if she had contact information for any maternal great relatives, but she reported there were no great relatives

4.

alive anymore. The social worker left messages for maternal aunt "Stephanie," paternal great-grandmother, and paternal cousin Teddy, but as of the writing of the report, the agency had not received calls back from them.

On June 12, 2023, the agency filed a second ICWA compliance report where it again recommended ICWA be found inapplicable. The agency stated that in an abundance of caution, it reached out to seven federally recognized Apache tribes to ensure they had no affiliation with the Apache tribe in Mexico. Specifically, it contacted the (1) Jicarilla Apache Nation, (2) the Yavapai-Apache Nation, (3) the Mescalero Apache Tribe, (4) the San Carlos Apache Tribe, (5) the Tonto Apache Tribe, (6) the White Mountain Apache Tribe, and (7) the Apache Tribe of Oklahoma "(Apache/Kiowa)." It should be noted that according to the Federal Register, there are eight federally recognized Apache tribes. It appears the agency did not contact the Fort Sill Apache Tribe. (See 88 Fed. Reg. 2112 (Jan. 12, 2023).)

The report further indicated that the agency had previously sent letters to all relatives identified as part of the family finding process. The letter contained the following statements:

> "Please note: if you know of any family members who have or possibly have Native American ancestry, please contact the [a]gency immediately and provide tribal information and/or enrollment information."

> "If you can help answer questions about yourself and other relatives who may be enrolled members of American Indian tribes, please let the social worker know."

However, no relatives had reached out in response.

On June 13, 2023, the juvenile court found there was no reason to know Evan was an Indian child and found the agency had complied with ICWA requirements.

On June 28, 2023, mother and father filed notices of appeal.

## DISCUSSION

I.  **ICWA**

A.  **Legal Principles**

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations].  'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 594, fn. omitted (*K.H.*); accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 138, fn. omitted (*E.C.*).)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.]  The Legislature's 'primary objective … was to *increase* compliance with ICWA.  California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.  [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.]  Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements.  [Citations.]  Those changes became effective January 1, 2019 ….' [Citation.]  Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

6.

### 1. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare agency] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare [agency] pursuant to [s]ection 306 … the county welfare [agency] … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following:  [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).)  "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare agencies "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes.  Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)

## B.     Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.)  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143.)  Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.]  The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.]  The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation].  '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *Caden C.* (2021) 11 Cal.5th

614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court[.]" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

## C. Analysis

In the present case, both mother and father denied having Indian ancestry. Thereafter, the agency conducted inquiries with paternal great-aunt Teresa who did not know whether the family had Indian ancestry and paternal uncle Kenny who refused to provide any information. Additionally, the agency spoke with maternal grandmother who stated the family possibly had Indian ancestry with an Apache tribe from Mexico.

Messages were left for maternal aunt Stephanie, paternal great-grandmother, and paternal cousin Teddy, but they did not return the agency's calls.

Mother and father argue further inquiry was warranted because maternal grandmother claimed possible ancestry with an Apache tribe from Mexico. However, we reject the parents' claim. There is no federally recognized Apache tribe from Mexico listed on the Federal Register. ICWA imposes no duty on the agency to investigate ancestry related to a non-federally recognized tribe. (See *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338, citing 25 U.S.C. § 1903(8) [" 'Indian tribe' is defined so as to include only federally recognized Indian tribes."]; *Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009 ["[A]n Indian child is one with a tribal affiliation, not merely Indian ancestry."].) Accordingly, the agency did not err in failing to conduct a further inquiry and any error in failing to contact all eight federally recognized Apache tribes to determine if they were affiliated with an Apache tribe from Mexico was harmless.

## DISPOSITION

The juvenile court's order is affirmed.

11.